AO 91 (Rev 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Indiana

United States of America
v.
BRADLEY A. REID

Defendant(s)

Case No. 1:22MJ - 76-SLC

-FILED-
MAY 0 6 2022
At _____ M
GARY T. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  05/02/2022  in the county of  LaGrange  in the
Northern  District of  Indiana , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 26 U.S.C. § 5861(d) | Possession of Unregistered NFA Firearm |

This criminal complaint is based on these facts:
See Attached Affidavit.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephonic means.

☑ Continued on the attached sheet.

_____
Complainant's signature

Phil Ealing, TFO ATF
Printed name and title

Sworn to before me and signed in my presence.

Date:  05/06/2022

s/ Susan Collins
_____
Judge's signature

City and state:  Fort Wayne, Indiana

Susan Collins, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

Comes now your Affiant, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Task Force Officer (TFO) Phillip Ealing currently assigned to the ATF Fort Wayne Field Office, first being duly sworn, now deposes and says:

Your Affiant is a Fort Wayne Police Officer/Detective assigned to the ATF as a Task Force Officer in the Fort Wayne Field Office. Your Affiant has been a Fort Wayne Police Officer for 17 years and has been on the ATF Task Force for three years. My duties include those of enforcing the Federal firearm laws under Title 18, United States Code and Indiana Criminal Law. I am a graduate of the Fort Wayne Police Academy, and because of my training and experience as a Police Officer and an ATF TFO, I am familiar with federal criminal laws, federal firearms laws, and state criminal laws. I have also attended training on interview techniques. During my experience with ATF and the Fort Wayne Police Department, I have been involved in many investigations involving homicides, armed drug trafficking, felons in possession of firearms, National Firearm Act (NFA) cases, controlled buys of illegal firearms, controlled buys of narcotics, undercover purchases of firearms, criminal gang cases, and have conducted hundreds of interviews of defendants and witnesses.

I am also a certified public safety bomb technician. As a public safety bomb technician, I have been certified by the Federal Bureau of Investigation (FBI) Hazardous Devices School (HDS) located at Redstone Arsenal, Huntsville, Alabama. This course is a six-week course to certified candidates as bomb technicians. It covers fundamentals of explosives, basic concepts of explosive demolition, locate and render safe techniques, as well as other topics related to the investigation into improvised explosive devices (IEDs) and other explosive related incidents. As a bomb technician I am required to return to HDS at Redstone Arsenal every three (3) years to recertify. As a bomb technician I have had numerous courses in explosives and explosive investigations. Those include post blast investigation through both the ATF and FBI. I have attended the Advanced Explosives Disposal Techniques (AEDT) course put on by the ATF, homemade explosives (HME) by the ATF, Advance Ordnance Recognition for Law Enforcement (AORLE) by the Texas A&M Extension, advanced post blast investigations by the ATF, and advanced arson and explosive investigation for agents by the ATF. I have been an adjunct instructor (AI) for the ATF AEDT course on three separate occasions and am a current member to the International Association of Bomb Technicians and Investigators.

As a bomb technician I have had dozens of calls for service in the past 7 years for suspicious packages, overpressure devices, and live and/or

2

suspected explosive devices to include pipe bombs. I have been a member of the Fort Wayne Police Department (FWPD) Hazardous Devices Unit (HDU) since 2013 and been a certified bomb technician since 2015.

This Affidavit is being submitted for the limited purpose of securing an arrest warrant for Bradley REID (hereinafter "REID"). Since this Affidavit is being submitted for the limited purpose of securing an arrest warrant for REID, your Affiant has not included each and every fact known concerning this investigation. Your Affiant has set forth only the facts that are necessary to establish probable cause.

Based on my investigation, your Affiant has probable cause to believe that on or about May 2, 2022, Bradley A. REID possessed a firearm and ammunition after having been convicted of a felony crime punishable by imprisonment of a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) and possessed a firearm which is not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).

The statements in this Affidavit are either known to me personally, based on my personal involvement in this investigation, or come from information provided verbally to me by other law enforcement personnel, information received by a review of court documents, records from the Indiana Department of Corrections, records maintained by the National Crime Information Center (NCIC), as well as my training experience, and the training

and experience of other law enforcement officers.

On or about May 2, 2022, LaGrange Police Department (LPD) Officer Tyler Smoker observed a black Chrysler 300 traveling south on Detroit St. with the driver side headlight not working. Officer Smoker initiated a traffic stop of the black Chrysler 300 near the intersection of N. Detroit Street and North Street in LaGrange, Indiana in the Northern District of Indiana.

After the vehicle stopped, REID was identified as the driver. LPD later learned from REID that the stopped vehicle is registered to REID's father but is primarily driven by REID. The front seat passenger was found to have an outstanding arrest warrant issued out of Elkhart County and was taken into custody. Officers Smoker observed an odor of marijuana from the passenger compartment of the vehicle. Officers conducted a search of the vehicle based upon probable cause that contraband would be found given the odor of raw marijuana emanating from the vehicle. A green, leafy substance with the odor of raw marijuana was found in the vehicle during the ensuing search.

During the search of the vehicle, LPD officers located two separate shotguns, one of which was a Remington, model 870, 12-gauge shotgun that was black in color. There was a large plastic case that contained a brown colored Remington, model 11, 12-gauge shotgun. An LPD Officer advised both REID and the front seat passenger of their Miranda Rights. REID waived his

right to have an attorney during questioning and advised Officer Smoker that the shotguns belonged to him.

The trunk also contained a black duffel bag that contained multiple 12-guage rounds, both loose and in boxes, over 100 rounds of .40 caliber pistol ammunition and shooting targets.

Also inside of the trunk, officers located a black plastic case. Upon opening the case, officers observed one galvanized steel pipe with two end caps and a green fuse coming from the end of one cap. They also observed a heavily taped cylindrical object with plastic "zip ties" and green fuse protruding from the end. The officers recognized these items as potential explosive devices and notified the FWPD HDU.

FWPD HDU responded to the location after the area was secure. REID and King were transported to LaGrange County Jail. A FWPD HDU bomb technician donned the appropriate protective equipment and remotely x-rayed the two suspected explosive devices.

Upon x-ray of the larger device with silver tape and zip-ties, FWPD HDU technicians observed what appeared to be a powder inside as well as live pistol ammunition, metal bb's, as well as the green hobby fuse. The x-ray of the galvanized steel pipe revealed no visible powder line, however, in your Affiant's experience, the absence of a distinctive powder line in an x-ray does not indicate the lack of an explosive or energetic powder. In your Affiant's

5

experience a "pipe bomb" is commonly referred to a type of improvised explosive device that contains a fuse, powder, and some type of containment. The device functions by lighting the fuse, most commonly hobby fuse, which initiates a small flame. The flame travels the length of the fuse until it reaches an amount of powder inside of the pipe. As the low explosive powder burns, pressure inside of the pipe or container increases. This rapid increase in pressure is more than the container can withstand, thus resulting in an explosion, sending parts and pieces flying through the air at a rapid rate. Both devices located in the trunk of the vehicle are consistent in appearance and construction as a "pipe bomb." Based on the x-ray interpretation of the devices by your Affiant and the bomb technician who x-rayed the devices, both appeared to be improvised explosive devices, more specifically destructive devices as that term is defined in 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(f). Based on your Affiant's training and experience the larger taped device is clearly an anti-personnel device because of the addition of metal objects to the inside of the device. Based on your Affiant's training and experience the addition of metal to the interior of the device is to create injury or death to an individual as those items become shrapnel when the device explodes and may have the capacity to harm persons in the vicinity of an explosion of the device. Based upon your affiant's training and experience, these devices appear to be homemade.

Your Affiant and LPD Detective Nicholas Martin conducted custodial interviews of REID and the vehicle passenger at the LaGrange County Jail. REID was taken into the interview room and was advised of his Miranda Rights by Det. Martin.

REID advised that he resides at a particular address in Milford, Indiana (in the Northern District of Indiana). REID advised that he picked up the vehicle passenger on the evening of May 1, 2022, and went to a casino. Afterwards he went to a residence in Michigan to pick up a female, and the three drove to a hotel in LaGrange. REID advised that he did not know the female's name. After a period of time, the female fell asleep, so REID and the passenger left the hotel. REID advised that he was then stopped by law enforcement. REID also admitted to possessing the Remington Model 11 shotgun. REID denied knowledge of the black bag or its contents, as well as any knowledge of the black plastic box or its contents. REID further denied having any knowledge of the Remington 870 shotgun. REID admitted that he is not allowed to possess firearms.

Your Affiant asked REID if his fingerprints or DNA would be on the plastic box (which had housed the apparent improvised explosive devices) and REID advised that he did not understand the question. Your Affiant further explained to REID that his prints or DNA would not simply be on the box by being present in the trunk of his vehicle. REID stated that "to his knowledge"

7

neither his prints nor DNA would be on the plastic box. Your Affiant asked REID again if his fingerprints or DNA would be recovered on the plastic box and REID paused, shook his head up and down in an affirmative motion and then stated that he believed that he needed to obtain a lawyer.

Your Affiant and Det. Martin interviewed the vehicle passenger after advising him of his Miranda Rights. The passenger stated that he was picked up at his house by REID. The passenger stated that they went to a residence in Michigan and picked up a female. The three went to a hotel in LaGrange, Indiana. After a brief time at the hotel, the female fell asleep, and he left with REID. The vehicle passenger stated that they were then pulled over by law enforcement. The vehicle passenger stated that he never accessed the trunk of the vehicle, nor did he witness anyone else access the trunk of the vehicle.

REID has previous felony convictions. On or about May 2, 2007, REID was found guilty of Operating While Intoxicated (D-Felony) and Resisting Law Enforcement (D-Felony) in the Elkhart County Superior Court under cause number 20D05-0612-FD-00437. Court records indicate that REID was present, in person, in court when he was convicted of the felonies listed above. Because of his felony convictions, REID is prohibited from possessing firearms and/or ammunition.

On the evening of May 2, 2022, ATF with the assistance of the FWPD HDU, Elkhart County Police Department (ECPD) and LPD obtained and

8

executed a search warrant at REID's residence in Milford, Indiana. During the search, law enforcement located zip-ties that were already put together in a circular fashion like those found on one of the suspected destructive devices. Law enforcement located "Tannerite" binary explosive in the basement inside of a "Tannerite" brand box that indicated it was for 10lbs of "Tannerite." Inside of the "Tannerite" box was an empty "Pyrodex" smokeless powder bottle and a length of green hobby fuse (AKA cannon fuse). Your Affiant knows that Pyrodex and other types of smokeless or black powder are commonly used as a filler in pipe bombs. Hobby fuse is commonly used as an initiator in pipe bombs. One of the devices in the traffic stop had zip-ties around the device in what appears to keep the container intact and aid in confinement of any powders inside. "Tannerite" and other types of binary explosive and binary exploding target compounds have been used to create explosions in various items, including, but not limited to household appliances, lawn care equipment, and various types of produce. The green fuse is similar in appearance to the fuse in the two recovered devices.

The defendant's girlfriend, also a resident of the Milford, Indiana home, was interviewed after being advised of her Miranda Rights. She advised that REID owns two shotguns and one pistol. She described one shotgun as being brown and old and the other as black with a sling on it. These descriptions match the shotguns recovered in REID's vehicle during the traffic stop.

REID's girlfriend was shown photos from the traffic stop, and she identified a black duffel bag as a bag that REID owns. REID's girlfriend also advised that she recognized the black plastic box that the apparent improvised explosive devices were recovered in. She stated that she knew the box as one that REID owns because it was an "Apache" box. She stated that REID has threated to "blow up" the house of people that owe him money. She also indicated that she knows REID to be a daily user of methamphetamine.

Your Affiant, by training and experience, knows that the shotguns were not manufactured in the State of Indiana. Based on your affiant's training and experience, both shotguns were designed to expel a projectile by the action of an explosive.[1] Based upon your Affiants training, your Affiant knows of no ammunition manufacturers in the State of Indiana, therefore, the ammunition recovered in the vehicle was not manufactured in Indiana.

Destructive devices may only be legally manufactured by an individual who has a destructive device manufacturing license from the ATF and pays the appropriate Special Occupation Tax (SOT). Furthermore, any destructive devices manufactured must be registered with the National Firearms Registration and Transfer Record (NFRTR) and the applicable tax must be

---

[1] The Remington Model 11 shotgun, though old, is a firearm as that term is defined in 18 U.S.C. § 921(a)(3) and is not an antique firearm as that term is defined in 18 U.S.C. § 921(a)(16)(A), because it was produced sometime after 1911. Antique firearms include only firearms manufactured in or before 1898.

paid. A destructive device manufacturing license is only valid for three (3) years and is subject to a criminal background check each time a license is applied for. REID does not possess a destructive device manufacturing license. REID does not have any National Firearms Act (NFA) weapons registered to him in the National Firearms Registration and Transfer Record, and thus cannot legally possess any weapon which is required to be registered pursuant to 26 U.S.C. §§ 5841 and 5861.

Based upon the foregoing, your Affiant has probable cause to believe that on or about May 2, 2022, Bradley REID possessed a firearm and ammunition after having been convicted of a felony crime punishable by imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1) and possessed an unregistered NFA firearm, in violation of 26 U.S.C. § 5861(d).

The foregoing facts are true to the best of your Affiant's knowledge and belief.

Further, your Affiant sayeth naught.

ATF TFO Phillip M. Ealing

Subscribed and sworn to before me, this 6th day of May 2022.

s/ Susan Collins
Honorable Susan Collins
Magistrate Judge
United States District Court

11